United States District Court
Southern District of Texas
**ENTERED**
July 15, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| APRIL POINT SOUTH PROPERTY OWNER'S ASSOCIATION, INC., | § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. H-23-2654 |
| v. | § § | |
| THIRD COAST INSURANCE CO., | § § | |
| Defendant. | § § § | |

**MEMORANDUM AND ORDER**

Roof damage insurance disputes are common, but most involve only one or two buildings and damages that narrowly exceed the jurisdictional limit. The property owners' association in this case, April Point South Property Owner's Association, claims that the insurer, Third Coast Insurance Company, owes over $1.8 million to repair hailstorm damage to 31 separate buildings in a condominium project near Lake Conroe. (Docket Entry Nos. 26 at 4; 24 at 21). Third Coast investigated the claim and denied coverage. (Docket Entry No. 24 at 8). April Point disputed the denial. Both parties retained adjusters and experts. (*Id.*). After the parties failed to reach resolution, April Point sued, claiming breach of contract, unfair settlement practices, violations of the Texas Insurance Code and the Deceptive Trade Practices Act, and breach of the duty of good faith and fair dealing.

Third Coast has moved for partial summary judgment based on policy language limiting certain categories of losses and damages that it must pay. The policy provisions at issue limit the covered loss amount to the actual cash value of the repairs as of the date of the loss for roofs over 15 years old on that date; exclude coverage to repair cosmetic damage; exclude coverage for

diminution of the property value; and exclude coverage for general contractor overhead costs and profits. Third Coast moves for summary judgment that it is not liable for these costs and that April Point cannot recover on its common law and extracontractual claims.

Based on the motions, the record, and the applicable law, the court grants in part and denies in part the motion for partial summary judgment. The court grants summary judgment that the covered loss amount is the replacement cost value for 4,400 square feet of roofs that were less than 15 years old on the date of loss but grants summary judgment that the actual cash value of the repairs applies to the remaining 186,400 square feet of roofs because the record does not show that they were less than 15 years old on the date of loss. The court grants summary judgment that the policy excludes coverage for cosmetic damage and diminution of value. Finally, the court denies summary judgment on the policy exclusion for the general contractor's overhead and profit for the "roof system and any components thereof," because it is unclear what the "roof system and any components thereof" includes. The reasons for these rulings are set out below.

I.      The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence

"which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quoting reference omitted).

## II.     Analysis

### A. The One Year Time Limit for Repairs to Obtain Replacement Cost Recovery

The policy states that Third Coast "will not pay on a replacement cost basis if complete repairs are not made within 365 days from the late of loss." (Docket Entry No. 26 at 16). After 365 days, only the actual cash value of the damaged property may be recovered. April Point responds that it did not repair the hailstorm damage within the year following the storm because Third Coast's coverage denial deprived April Point of the funds it needed to make the repairs. (Docket Entry No. 26 at 17). Under the case law, when "the insurance company has caused a delay past that contractual deadline, the insurance company cannot stand on that deadline and remains liable for that claim." *Devonshire Real Estate & Asset Management LP v. American Insurance Co.*, No. 3:12-CV-2199, 2014 WL 4796967 (N.D. Tex. 2014); *Kabir Marina Grand Hotel, Ltd. v. Landmark Am. Ins. Co.*, 660 F. Supp. 3d 622 (S.D. Tex. 2023); *Landmark Am. Ins. Co. v. Port Royal by Sea Condo. Owners Ass'n, Inc.*, 619 F. Supp. 3d 719, 727 (S.D. Tex. 2022); *see also Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000) ("when a promisor wrongfully prevents a condition from occurring that condition is excused.").

Third Coast did not pay anything under the policy in the year after the storm damage. April Point has presented evidence that Third Coast's coverage denial deprived April Point of the funds it needed to make the repairs.  (Docket Entry No. 26 at 17–18). As the *Kabir* court explained, if the insurer denies coverage for the repairs, the one-year "deadline may be extended, not necessarily eliminated." *Kabir*, 660 F. Supp. 3d at 624.  Although April Point may recover on a replacement cost value despite the one-year deadline, subject to the limitations discussed below, April Point must make the repairs in order to obtain coverage on a replacement value basis.

### B. The Age of the Roofs

Third Coast also argues that April Point can recover no more than the actual cash value of the repairs because the damaged roofs are over 15 years old. (Docket Entry No. 24 at 11). The policy states that "[a]ny damage to existing roof coverings that have been in place . . . for more than fifteen (15) years and one (1) day will be valued at 'Actual Cash Value[.]'" (Docket Entry No. 24-1 at 68).

April Point asserts that that it can show that at least two roofs were replaced" within the 15 years before the date of loss and therefore qualify for replacement cost value. (Docket Entry No. 26 at 18). Third Coast responds that while it does not dispute that 4,400 square feet of the damaged roofs are less than 15 years old, April Point has not shown that the other 186,400 square feet of the roofs are under 15 years old. (Docket Entry No. 27 at 9). The court agrees. April Point has not submitted or pointed to evidence in the summary judgment record that all or part of the remaining 186,400 square feet of the roofs were less than 15 years old when the loss occurred. Summary judgment is granted that April Point may recover replacement costs for the 4,400 square feet of roofs that were less than 15 years old on the date of loss and may recover only actual cash value as to the remaining roofs because the record does not show that they were less than 15 years old on that date. (Docket Entry No. 24 at 16).

### C. Coverage for Cosmetic Damage

The policy excludes payment for "cosmetic loss or damage" which it defines as damage "that alters only the physical appearance of any such item . . . but does not result in the failure of the item to perform its intended function for the remain[d]er of its original, useful life." (Docket Entry No. 24-1 at 31). Third Coast seeks summary judgment that April Point cannot recover for repairs to cosmetic damage to the property and is instead limited to the costs of repairing damage

5

that cause the property at issue to be unable to perform its intended function. (Docket Entry No. 24 at 17). April Point responds that it is not seeking insurance proceeds for repairing cosmetic damage, such as dents to the gutters and downspouts. (Docket Entry No. 26 at 20). Instead, April Point is seeking policy proceeds for the costs of detaching and reattaching the gutters and downspouts as part of repairing the roofs. (*Id.*). The parties agree that cosmetic work is not covered. April Point may not seek cosmetic damages to replace dented but functional parts of the property, but it may recover the costs of detaching and reattaching the gutters and downspouts if required to do the roof repairs.

### D.  Replacement Cost as of the Date of Loss

Third Coast asks for summary judgment that its obligation under the policy is for covered repairs at the "replacement cost as of the time and place of loss[.]". (Docket Entry No. 24 at 20). April Point argues that because Third Coast denied coverage, this coverage limitation does not apply. (Docket Entry No. 26 at 19). April Point's argument is unpersuasive.

"[T]he rights and obligations arising from [insurance contracts] and the rules used to construe them are those generally pertaining to contracts. . . . If an insurance contract covers certain risks but the policy contains exclusions or limitations of coverage, when the insured makes a claim for loss from a covered risk, the insurer must assert any applicable exclusion or limitation to avoid liability." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "[T]he doctrines of waiver and estoppel cannot be used to re-write the contract of insurance and provide contractual coverage for risks not insured." *Id.* at 775; *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 (Tex. 1988).

The policy provision limiting Third Coast's obligation to pay repair costs to the prices at the date of loss is unambiguous. The fact that Third Coast unsuccessfully disputed coverage

does not eliminate this limit on coverage. Third Coast is entitled to summary judgment limiting the damages to the costs of repair as of the date and place of loss.

### E. The Exclusion of General Contractor Overhead and Profit

The Third Coast insurance policy excludes recovery of "General Contract Overhead and Profit" for the "roof system or any component thereof[.]" (Docket Entry No. 24 at 28). April Point argues that this provision is not clear in what it excludes and that Third Coast has failed to show "what, if any[,] components or damages are excluded by the Policy[.]" (Docket Entry No. 26 at 19). April Point seeks to recover the cost of the general contractor's overhead for work such as "rooftop lattice work, the detach and reset of multiple rooftop HVAC units requiring a crane and an operator[.]" (*Id.* at 20).

Neither party has submitted or pointed to evidence as to whether the "roof system or any component thereof" includes HVAC units or lattice work. The court denies summary judgment because, while the policy excludes recovery for the general contractor's overhead and profit for the "roof system or any component thereof," the present record does not show what costs or work this policy language excludes.

### F. The Exclusion of Loss from the Diminution of Value

The insurance policy states that Third Coast "will not pay for loss to Covered Property due to any 'Diminution in Value[.]'" (Docket Entry No. 24 at 23). The policy makes clear that this exclusion extends to "actual or perceived loss in market or resale value[.]" (*Id.*). April Point argues that it is entitled to the cost of replacing the roofs because spot repairs of damaged roof shingles would result in shingles that are inconsistent in appearance, resulting in an unaesthetic exterior. (Docket Entry No. 26 at 21). April Point does not explain why this would have any effect beyond possibly diminishing market or resale value. (*Id.*). April Point may not recover

7

damages for diminution of market value based on the appearance of the roofs after repair as opposed to replacement.

### G. The Extracontractual Claims

Texas law imposes on insurers "a common law duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Aleman v. Zenith Ins. Co.,* 343 S.W.3d 817, 822 (Tex.App.—El Paso 2011, no pet.) (citing *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex.1995)). "An insurer will be liable if [it] denies a claim when the insurer knew or should have known that it was reasonably clear that the claim was covered." *Id.* "An insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Id.* "The issue of the breach of the duty of good faith and fair dealing 'focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct' in handling the claim." *Id.* (citation omitted).

"An objective standard is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim." *Id.* "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 459 (5th Cir.1997) (citing *Lyons v. Millers Cas. Ins. Co. of Texas,* 866 S.W.2d 597, 600 (Tex.1993)).

The record shows that Third Coast's inspector initially reported evidence of hail damage to the property and recommended payment of the claim. (Docket Entry Nos. 26 at 21–22; 26-5). After the initial investigation, Third Coast brought in independent engineering and weather consultants who disagreed with the inspector's determination. (Docket Entry No. 26 at 23). April Point has not submitted or pointed to evidence that these consultants made their findings in an

8

unobjective or unfair matter. (Docket Entry No. 27 at 12). "A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459. The evidence shows a bona fide controversy between various experts as to whether the damage was covered, precluding liability for bad faith. The extracontractual claims are dismissed.

**III.     Conclusion**

Third Coast's motion for partial summary judgment, (Docket Entry No. 24), is granted to limit recovery to the actual cash value for roofs except the 4,400 square feet that were less than 15 years old and to the costs of repair as of the date of loss, and to exclude coverage for diminution of value and repair of cosmetic damage. The court also grants summary judgment on the extracontractual claims. Third Coast's motion is denied as to the work covered by the general contractor overhead provision.

SIGNED on July 15, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge